IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
January 6, 2004 Session

## STATE OF TENNESSEE V. CLAUD E. SIMONTON

**Direct Appeal from the Circuit Court for Tipton County**
**No. 4414    Jon Kerry Blackwood, Judge**

---

**No. W2003-01437-CCA-R3-CD  - Filed April 28, 2004**

---

The defendant, Claud E. Simonton, went to trial initially in November 2002, on charges of driving under the influence (DUI) third offense, and violation of the implied consent law.  The jury was unable to reach a verdict and a mistrial was declared.  On April 2, 2003, the defendant was retried and convicted by the jury of third offense DUI.  The jury assessed a $1,200 fine.  The trial judge found that the defendant had violated the implied consent law.  The trial court ordered the defendant to serve his eleven month, twenty-nine day sentence in jail with release eligibility at 75% service. On appeal the defendant raises three issues.  First, he argues that the evidence is insufficient to support a conviction for DUI.  Second, the defendant maintains the trial court erred in denying a mistrial after the arresting officer referred to "seizing" the defendant's vehicle.  Finally, the defendant asserts the trial court erred in ordering incarceration for 75% of the sentence imposed.  We have examined each issue and determined that the judgment of the trial court must be AFFIRMED.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court is Affirmed**

JERRY L. SMITH, J., delivered the opinion of the court, in which DAVID G. HAYES, and THOMAS T. WOODALL, JJ., joined.

David S. Stockton, Covington, Tennessee, for the appellant, Claud E. Simonton.

Paul G. Summers, Attorney General & Reporter; Kathy D. Aslinger, Assistant Attorney General; Elizabeth Rice, District Attorney General; and Colin Campbell, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

Factual Background

On November 16, 2001, Tennessee State Trooper Gene Franks was on patrol in Tipton County. Around 11:45 p.m., he was traveling southbound on Highway 51, north of Covington, when he approached a white Mercury Marquis that was traveling in the right-hand lane. Because Trooper Franks was traveling at a greater speed than the Marquis, he moved into the left-hand lane to pass the vehicle. However, the Marquis also moved into the left-hand lane in front of Trooper Franks. Believing that the Marquis might be turning left shortly, Trooper Franks moved back into the right-hand lane to pass the Marquis on the right. After he did so, the Marquis moved back into the right-hand lane, and it "almost took the front of [Trooper Franks'] car off." When the Marquis moved back into the right-hand lane, it crossed the right "fog line" by "over a foot." At this point, Trooper Franks decided to stop the vehicle. He activated his blue lights, and the vehicle stopped about fifteen to twenty seconds later. Trooper Franks testified that this was "a little bit slow to respond," as most people's brake lights come on instantly following the activation of blue lights.

After the vehicle stopped, Trooper Franks approached the driver's window and encountered the defendant, who was driving the car. He smelled a strong odor of alcoholic beverage coming from inside the car. Trooper Franks asked for the defendant's driver's license, but the defendant initially handed Trooper Franks a credit card instead of a driver's license. When Trooper Franks asked the defendant if he had been drinking, the defendant said, "no." According to Trooper Franks, the defendant's speech was slurred, and he appeared to have trouble understanding what Franks was saying. Thus, Trooper Franks decided to conduct some field sobriety tests. He asked the defendant if the defendant had any physical problems or injuries that would prevent him from performing the tests, and the defendant stated that he had broken his hip and injured his knee while playing football years before at the University of Tennessee. However, the defendant did not state that these prior injuries would prevent him from performing the field sobriety tests.

Trooper Franks explained the walk-and-turn test to the defendant and demonstrated how to perform it. When the defendant attempted it, his performance was "terrible." The defendant took the wrong number of steps, he did not walk heel-to-toe, he raised his arms, and he stopped walking. The defendant also attempted the finger-to-nose test, but he never closed his eyes as instructed.

As Trooper Franks was preparing to handcuff the defendant, the defendant pulled out a business card of Captain Jim Irwin of the Tennessee Highway Patrol and stated that he was "best friends" with Captain Irwin. The defendant told Trooper Franks to call Captain Irwin, however Franks declined and took the defendant into custody. Once the defendant realized that he was under arrest, he became "very arrogant." While at the jail, the defendant told Trooper Franks that "since he was good friends with Captain Irwin with the Highway Patrol, that it would be noted on [Trooper

Franks'] record that [Trooper Franks] arrested him." Trooper Franks took his comments as a threat. Finally Franks testified that he felt the defendant was "extremely intoxicated."

Trooper Franks offered the defendant a breath test when the arrived at the jail, but the defendant refused the test and signed the implied consent form. Approximately forty-five minutes later, the defendant asserted that he wanted to take the test. Trooper Franks prepared the intoximeter, and the defendant acted like he was blowing into the machine. According to Trooper Franks, the defendant was "faking." He explained that the machine has lights that light up as you blow, and even "the smallest little puff will actually show one light." Because no lights appeared, Trooper Franks knew that the defendant did not blow into the machine. The defendant sat down after the first attempt, even though Trooper Franks asked him to come back and try again, as the machine gives a person three tries to get a breath sample.

Although the defendant did not indicate that he had any health problems which would affect his ability to take the breath test, Trooper Franks later discovered that the defendant had an asthma inhaler in his pocket. He asserted that asthma can affect whether a person can perform a breath test. Nevertheless, he maintained that the defendant refused to cooperate and was not simply unable to perform the test, as even a person with asthma would be able to make some of the lights appear.

Although he did not realize it until later, Franks testified that he had encountered the defendant in the Mercury Marquis earlier that fall. On that occasion, he observed the Marquis while on patrol and believed the window tint was too dark. Although he tried to catch up with the vehicle, he was unable to do so, so he turned around and stopped at a cemetery. Shortly thereafter, the vehicle he had been trying to stop pulled up behind him and the defendant got out. They talked for several minutes, and the encounter was friendly. The defendant stated that his son had been driving the car and thought a state trooper was after him, and Trooper Franks informed the defendant that he had been trying to catch up to the car to check the window tint. Trooper Franks demonstrated to the defendant using his "tint card," that the window tint was too dark, but because he did not stop the defendant he did not give the defendant a ticket.

Ree Kinsey, the Director of the Tipton County Sheriff's Department, testified regarding a Tipton County Sheriff Office Medical Sheet which is a document prepared in the normal course of business operations during the processing of inmates. The sheet for the defendant was filled out at 1:33 a.m., and it has an "N" for "no" listed by most questions. Among those questions are, "Appears to be under the influence of alcohol or drugs," and "Are there obvious signs of alcohol or drug withdrawal." The form had a "Y" for "yes" beside "appears normal," "alert, slash, oriented," and "belligerent." Additionally, the form indicates that the defendant does not have asthma, that he did not have any asthma pills or sprays with him, that he does not wear glasses or contacts. According to Ms. Kinsey, the intake officer who filled out this form has since been fired.

Andrea Patrick, the defendant's cousin, testified that she saw the defendant at a football game the Friday night prior to his arrest. The defendant's son was playing in the game, and the defendant sat with Ms. Patrick and her daughter. The game ended around 10:00 p.m., and the defendant

walked Ms. Patrick to the gate. At that time, the defendant had not been drinking, and he was not intoxicated.

Sam Naifeh testified that he has known the defendant his entire life, and he saw the defendant on that Friday night at Poe's Tavern. He asserted that the defendant came in as he was leaving, but they sat down and talked about the game from around 10:00 to about 10:15 to 10:30. Mr. Naifeh stated that he did not see the defendant drink anything while he was there, and the defendant did not appear to be intoxicated. Mr. Naifeh left the bar by 10:30 p.m. "at the latest."

The defendant testified that on Friday, November 16, he went to the football game around 6:30 and was there until it ended around 10:00 p.m. He then went to Poe's, where he arrived around 10:30 and stayed for about forty-five minutes. The defendant claimed Mr. Naifeh was mistaken as to the time they talked. He also denied drinking anything that night. The defendant asserted that after he left Poe's, he was traveling southbound on Highway 51 at fifty-five miles per hour. He stated that he observed a car "coming right up to" him in the right-hand lane. The defendant maintained that the car "was right on [his] rear end," so he got over into the left-hand lane. However, the car "mirrored" him. The defendant claimed that he then put on his turn signal and moved back into the right-hand lane, but the car "mirrored" his movements again. The car then turned on its blue lights, and the defendant stopped.

The defendant denied that he handed Trooper Franks a credit card, asserting that he got out his license as asked. He claimed that he performed the ABC test and the nose-touch field sobriety test, but that he told Trooper Franks he could not perform the walk-and-turn test because of prior injuries. The defendant also claimed that he told Trooper Franks he needed his inhaler out of the car and that Trooper Franks retrieved it for him. He denied pulling out Captain Irwin's business card or threatening Trooper Franks' job.

According to the defendant, although he initially refused the breath test, he later decided to take it. He stated that he initially refused because he "[p]robably figured the test might not be accurate." He believed that he made a good faith effort to take the test. He also asserted that Trooper Franks only let him blow once into the machine.

## Sufficiency of the Evidence

When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles. A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State. State v. Cazes, 875 S.W.2d 253, 259 (Tenn. 1994); State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence.

Id. The relevant question the reviewing court must answer is whether any rational trier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. See Tenn. R. App. P. 13(e); Harris, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." See Tuggle, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence in evaluating the convicting proof. State v. Tilson, 929 S.W.2d 380, 383 (Tenn. Crim. App. 1996); State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." Id. at 779.

Turning to the instant case, and resolving all conflicts in the testimony in favor of the State, it is clear that Trooper Franks' testimony concerning the defendant's driving, the smell of alcohol, his poor performance on the field sobriety tests, and his attempts to fake the initially refused breath test is sufficient for a jury to convict the defendant of DUI. This issue is without merit.

### Denial of Mistrial

When questioned on direct examination about what happened after the defendant refused the breath test and signed the consent form, Trooper Franks gave the following response:

> After I was filling this form out – I have a lot of paperwork to do, arrest reports, vehicle tow-ins; *I actually seized his vehicle that night* – so I have several minutes' paperwork to so. Throughout this time, Mr. Simonton was constantly berating me about how he wasn't drunk, and I said, well, if you don't think you're drunk, just go ahead – all you've got to do is walk right over here and give us a sample. I've already gave you a chance. So approximately 45 minutes – I don't know exactly – I had finished my paperwork. He decides he wants to give us a sample of the intoximeter. I said, okay. (Emphasis supplied)

The defendant did not contemporaneously object to the reference to the seizure of the defendant's vehicle, but at a recess a short time later moved for a mistrial claiming that it is common knowledge that vehicles are not seized by the Highway Patrol unless the driver has prior DUI convictions.

This Court recently addressed a similar issue in State v. Greenwood, 115 S.W.3d 527, 529 (Tenn. Crim. App. 2003). In Greenwood a videotape of the defendant's arrest for DUI was played to the jury. In the video tape the state trooper made reference to a "seizure" of the defendant's vehicle. At trial, the defendant moved for a mistrial claiming that this reference to a "seizure" conveyed to the jury that the defendant was a prior DUI offender since vehicle seizures are only authorized for second or subsequent DUI offenders. See Tenn. Code Ann. § 55-10-403(k)(1) (1998).

This Court found that this brief reference to a seizure was not so prejudicial as to require a mistrial. Moreover, this Court concluded that a jury would not necessarily have been aware that the defendant in Greenwood had prior DUI convictions. Id.

We find that this issue is controlled by Greenwood. The trial court did not abuse his discretion in denying a mistrial based on this isolated reference to a seizure. This issue is without merit.

## Sentencing

In his last issue the defendant complains that the trial court erred by ordering him to serve his sentence in confinement. He alleges that the trial court erroneously applied an inapplicable enhancement factor and failed to take into account the defendant's poor health as a mitigating factor.

First, it should be noted that the *mandatory* minimum sentence for third offense DUI is 120 days incarceration. Tenn. Code Ann. § 55-10-403(a)(1). Neither the trial court nor this Court has the power to reduce the defendant's incarcerative sentence below 120 days. Thus, the precise sentencing issue in this case is whether the trial court erred in setting the defendant's jail sentence above 120 days.

Misdemeanor sentencing is controlled by Tennessee Code Annotated section 40-35-302, which provides in part that the trial court shall impose a specific sentence consistent with the purposes and principles of the 1989 Criminal Sentencing Reform Act. See Tenn. Code Ann. § 40-35-302(b). Misdemeanor sentencing is designed to provide the trial court with continuing jurisdiction and a great deal of flexibility. See State v. Troutman, 979 S.W.2d 271, 273 (Tenn. 1998); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997). One convicted of a misdemeanor, unlike one convicted of a felony, is not entitled to a presumptive sentence. See State v. Creasy, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

In misdemeanor sentencing, a separate sentencing hearing is not mandatory, but the court is required to provide the defendant with a reasonable opportunity to be heard as to the length and manner of service of the sentence. Tenn. Code Ann. § 40-35-302(a). The trial court retains the authority to place the defendant on probation either immediately or after a time of periodic or continuous confinement. Tenn. Code Ann. § 40-35-302(e). In determining the percentage of the sentence to be served in actual confinement, the court must consider the principles of sentencing and the appropriate enhancement and mitigating factors, and the court must not impose such percentages arbitrarily. Tenn. Code Ann. § 40-35-302(d).

At the sentencing hearing, the defendant testified that he has two sons who were living with him that summer: one is a student at Tennessee Tech, and the other recently graduated from high school. The defendant maintained that he does not work because he is disabled due to "asthma and a couple of other things." He explained that he has to use a breathing machine four times a day, that he uses three "breathalizers," that he uses a nose spray, and that he takes additional medication. The

defendant asserted that he has been to the emergency room about eight times in the past five or six years. According to the defendant, at the time of the sentencing hearing he was "alcohol free and drug free," and he did not "see getting back into that place in [his] life." He apologized to the trial court for his trial testimony, stating that it "was inappropriate and I know it now." He also testified about an incident that occurred at Kroger in which he assisted the police in apprehending a fleeing subject. On cross-examination, the defendant admitted that he is facing charges of vehicular homicide in Memphis.

According to the presentence report, the defendant has five prior convictions for DUI, although he was only convicted of a third offense DUI in this case. One was in 1998; one was in 1996; one was in 1985; one was in 1983; and one was in 1980. The defendant also has a prior conviction of driving without a license and a prior conviction of misdemeanor theft. Additionally, he had vehicular homicide charges pending in Shelby County.

The trial court in this case determined that there were no mitigating factors but that there was an applicable enhancement factor, as the defendant has a prior history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Considering the defendant's five prior convictions for DUI, which evince the defendant's unwillingness to abide by the drinking and driving laws of this state, the trial court properly applied this enhancement factor. See Tenn. Code Ann. § 40-35-114(2). Additionally, while the trial court could have considered the defendant's health problems as a mitigating factor under the "catch-all" mitigating factor, Tenn. Code Ann. § 40-35-113(13), the trial court was justified in rejecting this factor as the defendant's health problems did not contribute to and do not excuse the defendant's years of disregarding the DUI laws.

Although the defendant claims that the trial court enhanced his sentence because he had been previously wrongfully convicted of the sale of marijuana, it appears that while the trial court mentioned this prior wrongful conviction, it did not enhance the defendant's sentence because of it. Rather, the trial court used this prior situation to demonstrate that the defendant has a disturbing disregard for the criminal justice system which had exonerated him in the past. The trial court stated:

> The Court finds the defendant has a prior history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range and the Court finds no mitigating factors.
>
> You didn't need to apologize to me, Mr. Simonton, for your testimony in the courtroom. I've heard worse than that. What you needed to do was apologize to the criminal justice system. If ever anybody received a break from the criminal justice system, you did. You happened to be one of the proudest moments of the criminal justice back in the 1980s. I sat and watched a lady lie to get you convicted. It just about broke my heart to do that, to see the system

-7-

fall so low. Any when we had the first opportunity, we set that conviction aside when we could prove that she was lying. If anything should have told you that the criminal justice system is something that is important, that should have. And what have you done since that time? You've flaunted it with five DUIs. You had a break of a lifetime. It didn't make any difference. But what did make a difference was the fact that the system worked and now you have – you've shown a total disregard for it.

It is obvious that the defendant's past punishments have not been successful at rehabilitating him. Pursuant to statute, sentences involving confinement are appropriate when "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant." Tenn. Code Ann. § 40-35-103(1)(C). Considering the defendant's failures at rehabilitation when given partial suspended sentences, the trial court properly ordered the defendant to serve his eleven-month, twenty-nine-day sentence in confinement.

### Conclusion

Based on the foregoing, the judgment of the trial is AFFIRMED.

_____
JERRY L. SMITH, JUDGE