FILED

03/24/2017

Clerk of the
Appellate Courts

IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2017

**STATE OF TENNESSEE v. ANTHONY J. BOOKOUT, SR.**

**Appeal from the Circuit Court for Madison County**
**No. 16-140   Roy B. Morgan, Jr., Judge**

———————————————————

**No. W2016-01694-CCA-R3-CD**

———————————————————

In April 2016, the Madison County Grand Jury indicted the Defendant, Anthony J. Bookout, Sr., on charges of driving under the influence (DUI), driving while his alcohol concentration was .08% or more (DUI *per se*), DUI second offense, leaving the scene of an accident, and evading arrest. Following a trial, a jury convicted the Defendant of DUI, DUI *per se*, DUI second offense, and leaving the scene of an accident involving injuries, for which the Defendant received an effective sentence of eleven months and twenty-nine days suspended to supervised probation following the service of ninety days in jail. On appeal, the Defendant contends that the evidence presented at trial was insufficient to support his convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and JAMES CURWOOD WITT, JR., J., joined.

George Morton Googe, District Public Defender, and Jeremy B. Epperson, Assistant District Public Defender, for the appellant, Anthony J. Bookout, Sr.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; Jerry Woodall, District Attorney General; and Matthew A. Floyd, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

*State's Proof*

During the first phase of the Defendant's bifurcated trial, Terry Springfield testified that he was traveling west-bound on Highway 70 in Madison County on June 24, 2015. Mr. Springfield saw a truck "sitting" in the left lane of traffic—the same lane in which he was traveling. In order to avoid it, Mr. Springfield veered into the median. At the same time, the truck moved into the median, and Mr. Springfield's black Cadillac Escalade hit the truck. Following the collision, Mr. Springfield's SUV became inoperable, and although he attempted to move it out of the road, the vehicle was partially blocking traffic in the westbound lane. The blinkers and headlights on Mr. Springfield's SUV were not working, and the only lighting in the area consisted of one light coming from a nearby store. As a bystander approached to check on Mr. Springfield, Mr. Springfield heard someone saying, "Hey, hey slow down, slow down," and then a motorcycle collided with the passenger side of Mr. Springfield's SUV. Mr. Springfield, along with other bystanders, assisted the two people on the motorcycle that were "stuck" against Mr. Springfield's SUV. Mr. Springfield helped to lift the motorcycle up, and the two people fell to the ground. Mr. Springfield described the driver of the motorcycle as an elderly man with long white hair wearing a black leather jacket and blue jeans. The driver was not "talking right" and "couldn't tell what was going on." Mr. Springfield recalled that the truck he initially struck was no longer at the scene when the motorcycle collided with his vehicle.

Josh Noles testified that he was traveling home from work around 10:35 p.m. on June 24, 2015, when he encountered Mr. Springfield's disabled SUV on Highway 70. Mr. Noles recalled that it was hard to see the disabled vehicle as there were no lights on the vehicle and the area was not very well lit. Mr. Noles got out of his car to check on Mr. Springfield. As he was speaking to Mr. Springfield, Mr. Noles heard a motorcycle approaching and then saw it crash into Mr. Springfield's disabled vehicle. Mr. Noles helped to move the motorcycle off of "[a] gentleman and a woman," who were pinned between it and Mr. Springfield's SUV. Mr. Noles noticed two alcohol bottles on the ground. The man on the motorcycle was an older man, wearing blue jeans, who appeared disoriented and smelled of alcohol. The man said he was "fine," and he was able to stand up and move to "the side." The woman appeared to have been unconscious for a time. Mr. Noles, who was a first aid responder, tended to the woman as police officers arrived at the scene. As Mr. Noles tended to the woman, he observed the man running with an officer in pursuit. Eventually, officers apprehended the man and brought him back to the scene of the crash.

Trooper Adam Cash with the Tennessee Highway Patrol testified that, on the night of June 24, 2015, he responded to a call regarding a vehicle crash on Highway 70. Upon arriving at the scene in his marked patrol car, Trooper Cash observed an SUV in the roadway blocking the westbound lane of traffic, a motorcycle on the ground next to the vehicle, and an injured woman on the ground near the motorcycle. As he was speaking to the woman on the ground, another woman ran up to Trooper Cash yelling, "He's over here. He's intoxicated. He was the driver." Another witness told Trooper Cash that the man was running around a house, and the witness pointed to a white man with long gray hair, black leather jacket, and blue jeans. The trooper, who was in his uniform, yelled at the man to stop running, but the man continued to run. Trooper Cash chased the man for a short distance before apprehending him. The man stated, "I'm just drunk," and he told Trooper Cash that he had "quite a bit" to drink. The man, whom Trooper Cash identified as the Defendant, said that he had had "a couple of drinks." When Trooper Cash asked the Defendant about the wreck, the Defendant did not appear to know what had happened and could not answer questions about it. Nonetheless, Trooper Cash was able to identify the motorcycle as being registered to the Defendant. Trooper Cash did not request the Defendant to perform field sobriety tests; however, Trooper Cash testified that, based on his training, he believed the Defendant was impaired due to "indicators" he observed. He detected a strong odor of alcohol from the Defendant, the Defendant's eyes were bloodshot and watery, the Defendant was swaying back and forth, and he was unable to hand Trooper Cash his driver's license on the first try. Additionally, the Defendant repeatedly stated, "I'm drunk," and he asked Trooper Cash what had happened, multiple times. Trooper Cash identified the Defendant as the driver of the motorcycle based on statements given at the scene, including those made by the Defendant. Trooper Cash requested that the Defendant submit to a blood sample for testing to which the Defendant complied. The Defendant's blood sample was taken at 1:42 a.m. on June 25, approximately three hours after the crash.

Trooper Cash explained that his patrol car was equipped with a "digital dash camera" that recorded video and audio from the scene that night. The video was played to the jury, and Trooper Cash identified the Defendant's voice saying that he was drunk and that of a witness saying that the Defendant was running.

Special Agent Julian Conyers, a forensic scientist with the Tennessee Bureau of Investigation toxicology blood alcohol unit, testified that he analyzed the Defendant's blood sample and found that it contained 0.128 gram percent ethyl alcohol. He testified that a saline solution IV could elevate the results of a person's blood alcohol level.

*Defendant's Proof*

Linda Kelly testified that, on June 24, 2015, she worked as a bartender at The Office Lounge, where she saw the Defendant from around 7:00 p.m. until 9:00 p.m. Ms. Kelly saw the Defendant on the patio, eating and talking with other customers. According to Ms. Kelly, the Defendant normally only drank one beer, and on that night, she was unsure as to whether the Defendant even finished one. Ms. Kelly saw the Defendant leave the bar around 9:00 p.m. with a woman. Ms. Kelly acknowledged that the Defendant would usually leave and visit another bar, The Pit Stop, to listen to a band there.

Charlotte Arnold, the Defendant's friend and owner of The Pit Stop, testified that the Defendant came to that establishment around 9:15 p.m. that night. The Defendant came in with a woman, ordered a beer, and listened to music. Ms. Arnold recalled that the Defendant left the bar a few minutes after 10:00 p.m. She was unaware of the Defendant's actions between the time he left The Pit Stop and the time that the crash occurred.

Nichole Rollins, a friend of the Defendant, testified that she was riding with the Defendant on his motorcycle on the night of June 24, 2015. Ms. Rollins stated that she was with the Defendant at The Office Lounge and The Pit Stop before the wreck. Ms. Rollins said that she had approximately one and a half beers before the crash, and the Defendant had one and a half to two beers. She claimed that the Defendant did not have anything else to drink before the crash. Ms. Rollins recalled riding down Highway 70 and seeing the stalled SUV in the roadway; she then woke up in a helicopter. Ms. Rollins sustained a "[m]ashed" nose, bruises, and "road rash." Ms. Rollins testified that the Defendant saved her life that night with his "quick thinking and alertness" while driving the motorcycle.

The Defendant testified that on the night of the crash he arrived at The Office Lounge around 6:00 p.m. During his time there, the Defendant ate dinner and drank one beer. After leaving The Office Lounge around 9:00 p.m., he went to The Pit Stop where he had another beer. The Defendant testified that he was driving fifty-five miles per hour on Highway 70 and that he saw the SUV in his lane after coming around a curve and up a hill. The Defendant recalled that he had no other option but to "lay the bike down" in order to minimize injury to his passenger. The Defendant stated that he did not remember anything that happened after the crash until he was on the helicopter. Although he had seen Trooper Cash's dash camera video from the scene, he did not recall doing and saying the things depicted in the video.

The Defendant testified that he suffered serious injuries, including a broken neck, jaw, and clavicle, and that he did not know why he stated on the video that he was uninjured. He opined that his false statements to Trooper Cash were likely due to being "in shock" and "completely delusional" after the wreck. The Defendant acknowledged that he had alcohol in his system but said that he drank at most three beers, over a three to four hour period. He contested the results of the blood alcohol testing, explaining that he was administered an IV while in the helicopter and prior to the blood sample being taken. The Defendant said that he did not believe that the blood sample showing an alcohol level of 0.12 could have been his.

*Proof of Prior Conviction*

During the second phase of trial, the State presented a certified judgment of conviction showing that the Defendant had a previous conviction for DUI on December 1, 2006, in the Hardeman County General Sessions Court.

Following deliberations, the jury found the Defendant guilty of DUI, DUI *per se*, DUI second offense, and leaving the scene of an accident but acquitted the Defendant of evading arrest. At a sentencing hearing, the trial court merged the Defendant's convictions for DUI and DUI *per se* into the conviction for DUI second offense. The trial court sentenced the Defendant for DUI second offense and leaving the scene of an accident to concurrent terms of eleven months and twenty-nine days suspended to supervised probation following the service of ninety days in jail. The Defendant filed a timely motion for new trial, which the trial court denied following a hearing. This timely appeal follows.

## Analysis

On appeal, the Defendant contends that the evidence presented at trial was insufficient to support his convictions. Specifically, he argues that: (1) Trooper Cash failed to conduct field sobriety tests before reaching the conclusion that the Defendant was impaired; (2) any incriminating actions and statements after the crash were not caused by the Defendant's intoxication but by the Defendant's "state of shock due to the collision and his injuries"; (3) Agent Conyers' testimony regarding the blood alcohol testing should not have been relied upon; and (4) and the Defendant's actions showed that he was not impaired.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R.

App. P. 13(e).  Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder.  *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997).  This court will not reweigh the evidence.  *Id.*  Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence."  *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt.  *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  The defendant bears the burden of proving why the evidence was insufficient to support the conviction.  *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914.  On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom."  *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

As charged in this case,

It is unlawful for any person to drive or to be in physical control of any automobile . . . on any of the public roads and highways of the state . . . while:

(1) Under the influence of any intoxicant . . . that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself which the driver would otherwise possess;

(2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more . . . .

Tenn. Code Ann. § 55-10-401(a)(1)-(2) (Supp. 2015); *see also* Tenn. Code Ann. § 55-10-402(a)(2)(A) (Supp. 2015) (providing the minimum sentencing for a person convicted of DUI, second offense).

Tennessee Code Annotated section 55-10-101 requires the driver of "any vehicle involved in an accident resulting in injury . . . to remain at the scene" to offer information or render reasonable assistance.  Tenn. Code Ann. §§ 55-10-101(a), -103(a) (2012).

When viewed in the light most favorable to the State, the evidence established that the Defendant crashed his motorcycle into a stalled SUV on Highway 70 after drinking beer at two different bars.  Witnesses to the crash stated that the Defendant smelled of alcohol, and Mr. Noles saw two alcohol bottles on the ground near the Defendant's

motorcycle. When Trooper Cash arrived on the scene, he found that the Defendant was impaired. The Defendant smelled strongly of alcohol, the Defendant's eyes were bloodshot and watery, the Defendant swayed back and forth, and he was unable to hand Trooper Cash his driver's license on the first try. The Defendant also repeatedly stated, "I'm drunk," when talking to Trooper Cash. Although the Defendant presented witnesses who stated that he had consumed, at most, three beers in the hours before the wreck and was not impaired, the jury clearly accredited the testimony of the State's witnesses over those of the Defendant and made a reasonable inference that the Defendant was under the influence of an intoxicant while driving his motorcycle. Moreover, a blood sample taken from the Defendant approximately three hours after the crash revealed a blood alcohol level of 0.128, and this court has previously stated that "a proper blood alcohol test administered at a reasonable time after the [accused] has been driving, which reflects a blood alcohol content of [.08 percent] or higher, constitutes circumstantial evidence upon which the trier of fact may, but is not required to, convict the [accused] of DUI [*per se*]." *State v. Greenwood*, 115 S.W.3d 527, 532-33 (Tenn. Crim. App. 2003); *see State v. John N. Moffitt*, No. W2009-02286-CCA-R3-CD, 2010 WL 5274049, at *2 (Tenn. Crim. App. Dec. 15, 2010). Finally, the State offered into evidence a certified judgment of conviction showing that the Defendant had a previous conviction for DUI on December 1, 2006, in the Hardeman County General Sessions Court. The evidence is sufficient to support the Defendant's convictions for DUI, DUI *per se*, and DUI second offense.

Likewise, the proof at trial established that the Defendant left the scene of an accident involving injuries. Ms. Rollins lost consciousness for a time and was injured during the accident, and multiple witnesses testified that the Defendant ran from the scene, despite Trooper Cash's yelling for the Defendant to stop. The Defendant was only apprehended after Trooper Cash chased him down. Thus, the State presented ample evidence to support the conviction.

## Conclusion

For the aforementioned reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE