IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs July 27, 2010 at Knoxville

**STATE OF TENNESSEE v. LAWRENCE D. RALPH**

**Appeal from the Circuit Court for Warren County**
**No. 10897     Larry B. Stanley, Jr., Judge**

**No. M2010-00326-CCA-R3-CD - Filed December 10, 2010**

The Defendant, Lawrence D. Ralph,[1] was convicted of driving under the influence (DUI), fourth offense; DUI per se, fourth offense; driving on a revoked driver's license, fifth offense; violation of the habitual traffic offender status; and two counts of evading arrest. The trial court merged the DUI per se conviction with the first count and merged the driving on a revoked license conviction with the habitual traffic offender conviction. The trial court sentenced the Defendant to four years each for the DUI, fourth offense conviction; the habitual traffic offender status conviction; and the felony evading arrest conviction, to be served consecutively for an effective 12-year sentence. In this appeal as of right, the Defendant contends (1) that the evidence was insufficient to convict him of DUI, fourth offense and (2) that the trial court's sentence was excessive. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3; Appeal as of Right; Judgments of the Circuit Court are Affirmed**

D. KELLY THOMAS, JR. J., delivered the opinion of the Court, in which JOSEPH M. TIPTON, P.J., and JAMES CURWOOD WITT, JR., J., joined.

Gregory D. Smith, Contract Appellate Defender; Dan T. Bryant, District Public Defender; and Scott Grissom, Assistant Public Defender, for the appellant, Lawrence D. Ralph.

Robert E. Cooper, Jr., Attorney General and Reporter; Lacy Wilber, Assistant Attorney

---

[1] The Defendant is referred to as Lawrence D. Ralph, Lawrence David Ralph, Lawrence D. Ralph, Jr., and Lawrence David Earl Ralph, Jr. in the record. This court will refer to the Defendant by the name contained in the indictment.

General; Lisa Zavogiannis, District Attorney General; and Darrell Julian, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On September 1, 2006, Trooper Bruce Pryor of the Tennessee Highway Patrol was patrolling Warren County. When Trooper Pryor stopped at the intersection of Dogtown Road and Starlight Road he saw a white Pontiac coming around the curve "a little fast" and crossing into the other lane of traffic. Trooper Pryor testified that there were no lane markings on the road but that he was positive that the Pontiac had moved out of its lane and into the opposing lane of traffic. Trooper Pryor decided to give the driver a warning and signaled for him to pull over. When the Pontiac stopped, Trooper Pryor stepped out of his vehicle and was approaching the Pontiac when it sped off. Trooper Pryor chased the Pontiac and followed it to Ferrell Rogers Road where the driver crossed into the opposite lane of traffic and parked the car on the left side of the road. The driver then left the vehicle and ran into the nearby woods. At trial, Trooper Pryor identified the Defendant as the driver and testified that when the Defendant left the vehicle his hair was in a ponytail, he had on a white tee shirt, and he was wearing denim "short pants."

After the Defendant fled into the woods, David Judkins exited from the passenger side of the vehicle. Trooper Pryor arrested Mr. Judkins for public intoxication and placed him in the patrol car. Troopers Donnie Clark and Mike Tanner arrived shortly after and assisted Trooper Pryor in searching the area for the Defendant. While the Troopers were searching for the Defendant, Johnny McCormick, Jr. was driving down Dogtown Road. Mr. McCormick saw a man leave the woods, wait until Mr. McCormick's truck had passed him, and then run across the street "into the pines." Mr. McCormick testified that the man had long hair that was not tied up and that he was carrying a white shirt in his hand. Mr. McCormick also testified that the man was looking around "like he was scared." At trial, Mr. McCormick identified the Defendant as the man he saw crossing Dogtown Road and entering the woods. After seeing the Defendant, Mr. McCormick's brother called him and informed him that the police were looking for someone in the area. Mr. McCormick turned onto Starlight Road where he came across Trooper Pryor and informed him of what he had seen.

While Trooper Pryor was searching for the Defendant, a local resident approached him and suggested that he check at the home of Sheila Hobbs. Based on this information, Troopers Pryor and Clark went to Ms. Hobbs's residence. Trooper Pryor asked Ms. Hobbs if there was anyone with her in the residence, and she replied that there was. The Pontiac was registered to Lynn Ross, so Trooper Pryor asked Ms. Hobbs if she knew a Lynn Ross. Ms. Hobbs responded by asking Trooper Pryor "Who is Lynn Ross?" The Defendant, coming from the back of the residence, responded, "That's my old lady." When Trooper

Pryor saw the Defendant he recognized him as the driver and placed him under arrest. Trooper Pryor testified that when he arrested the Defendant, there were leaves and twigs in the Defendant's hair and scratches on the Defendant's legs. Trooper Pryor spoke with the Defendant and smelled "the strong odor of alcohol" and noted that his eyes were bloodshot. Trooper Pryor also testified that the Defendant was alert and seemed "frazzled" at Ms. Hobbs's residence. According to Trooper Pryor, it was approximately 45 minutes between the time he saw the Pontiac cross into the opposite lane of traffic and the arrest of the Defendant.

The Defendant was taken to the jail where Trooper Pryor asked him to consent to a breath-alcohol test. The Defendant agreed, and Trooper Pryor reviewed the implied consent form with the Defendant. The Defendant signed the form after reading and reviewing it with Trooper Pryor. Trooper Pryor testified that the intoximeter used was certified by the Tennessee Bureau of Investigation and that he was certified to operate the machine. Trooper Pryor then observed the Defendant for 20 minutes and during that time the Defendant did not put anything in his mouth, did not chew any gum or tobacco, did not smoke or drink anything, and did not appear to belch. After observing the Defendant for 20 minutes, Trooper Pryor administered the breath-alcohol test. The intoximeter then produced a printout showing the Defendant's blood alcohol level to be .09.

Ms. Hobbs testified on behalf of the Defendant and stated that the Defendant was sleeping in her bedroom when Trooper Pryor arrived. Ms. Hobbs testified that the Defendant had been performing various repairs to her home in the days leading up to September 1, 2006. However, Ms. Hobbs was unable to recall if the Defendant had been working on her home that day or how long the Defendant had been at her home that day. Ms. Hobbs also testified repeatedly that she was unable to recall how long the Defendant had been asleep in the bedroom that afternoon. Ms. Hobbs testified that the Defendant had been asleep for more than five minutes and possibly more than 15 or 30 minutes, but she was unable to testify as to exactly how long the Defendant was asleep. Ms. Hobbs also testified that after the Defendant was arrested, she did not find any blood or leaves on her bed.

Based on the foregoing evidence, the jury convicted the Defendant on all counts. At the sentencing hearing, the trial court classified the Defendant as a Range II offender. In sentencing the Defendant, the trial court considered the Defendant's "long history of criminal activity and criminal convictions" and his previous failure to comply with the conditions of a sentence involving release into the community. The trial court rejected the Defendant's assertion that his serving a 17-year prison sentence in another case was a mitigating factor. However, the trial court considered the fact that the Defendant obtained his GED when previously incarcerated and that he completed the design for living program as well. After weighing these factors, the trial court sentenced the Defendant to the maximum, four years,

for the DUI conviction, the violation of Habitual Traffic Offender status, and the felony evading arrest conviction. The trial court order the sentences to run consecutively to each other for a total effective sentence of 12 years. This decision was based on the Defendant's "blatantly obvious" extensive criminal record and the fact that the Defendant "has devoted a great deal of his life to criminal acts . . . ."

## ANALYSIS

### 1. Sufficiency of the Evidence

The Defendant contends that the evidence was insufficient to sustain his conviction of driving under the influence because the State failed to establish that he was driving the vehicle while intoxicated. The Defendant contends that the 45 minutes between his leaving the Pontiac and his arrest make it impossible for the State to prove that he was driving the vehicle while intoxicated. Specifically the Defendant asserts that "[i]t is not unreasonable to think that a man in [the Defendant's] condition would drink something after all the trouble he saw [that day]" and that "it is reasonable to assume that [the Defendant] calmed himself and quenched his thirst with alcohol" at some point while the Troopers were searching for him. The State responds that it produced sufficient circumstantial evidence that the Defendant was driving while intoxicated. Furthermore, the State argues that there was no evidence that the Defendant had consumed any alcohol during the 45 minutes the Troopers were searching for him.

An appellate court's standard of review when the defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). The court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the state. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).

The Defendant was convicted of DUI in violation Tennessee Code Annotated section 55-10-401. The statute states, in pertinent part:

> (a) It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park or any apartment house complex, or any other premises which is generally frequented by the public at large, while:
>
> > (1) Under the influence of any intoxicant, marijuana, narcotic drug, or drug producing stimulating effects on the central nervous system; or
> >
> > (2) The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (.08%) or more.

Tenn. Code Ann. § 55-10-401(a)(1). The State must prove beyond a reasonable doubt that the Defendant was actually driving a vehicle or was in physical control of a vehicle at the time the violation allegedly occurred. We also note that this court has held that in DUI cases, a police officer's testimony, by itself, is sufficient evidence to convict a defendant of driving under the influence. See State v. Vasser, 870 S.W.2d 543, 544 (Tenn. Crim. App. 1993) (stating that the State did not need more than the deputy's testimony to prove its DUI case).

A proper blood alcohol test, such as the breath-alcohol test given to the Defendant, "administered at a reasonable time after the defendant has been driving . . . constitutes circumstantial evidence upon which the trier of fact may, but is not required to, convict the defendant of DUI." State v. Greenwood, 115 S.W.3d 527, 532-33 (Tenn. Crim. App. 2003). This court has repeatedly refused to set a bright line rule as to what constitutes "a reasonable time after the defendant has been driving." Id. at 533; see also, State v. Daniel Blake, No. W2004-01253-CCA-R3-CD, 2005 WL 1467907 (Tenn. Crim. App. June 21, 2005) (stating that "Greenwood disposes of this issue"). Instead, "[a]ny delay between driving and testing may be considered by the trier of fact as to the weight to be given the test." Greenwood, 115 S.W.3d at 533. A defendant may always "endeavor to establish through proper evidence that the test result does not accurately reflect the blood alcohol level at the time the defendant was driving the vehicle." Id.

In his brief, the Defendant relies heavily upon this court's decision in State v. Christopher Marchant, No. 1988 WL 73092 (Tenn. Crim. App. July 15, 1988), arguing that it stands for the proposition that an hour delay between the defendant's driving and a breath-alcohol test makes the test results insufficient to sustain a conviction for DUI. However, the time delay between driving and the breath-alcohol test was not determinative in this court's decision. In Marchant, the defendant was arrested after a "hit and run" accident with a parked car. Id. at *1. The State presented no evidence regarding the defendant's driving or that the defendant was under the influence while driving. Id. Instead, the only evidence about the defendant's drinking was his testimony that when he arrived home an hour before the arrest, he had several rum and colas. Id. In fact, the arresting officer saw the defendant drinking a rum and cola at the time he confronted him in his home. Id. Based on these facts, this court found the proof insufficient to sustain the defendant's conviction of DUI. Id.

The delay between the Defendant's stop and his arrests was a consideration for the jury in determining the weight to be given to the breath-alcohol test. In addition to the breath-alcohol test, the State introduced Trooper Pryor's testimony that the Defendant was the driver of the white Pontiac, was driving too fast, was driving on the wrong side of the road, and then fled into the woods when Trooper Pryor attempted to stop him. The State also introduced the testimony of an eyewitness who saw the Defendant running through the woods after the traffic stop. Trooper Pryor also testified that when he spoke to the Defendant at Ms. Hobbs's residence, he smelled of alcohol and had bloodshot eyes. The jury determined that the State's evidence outweighed Ms. Hobbs's testimony that the Defendant was asleep in her bedroom and, therefore, could not have been the driver of the Pontiac. Furthermore, there is no evidence in the record that would suggest the Defendant had any alcohol during the 45 minutes the Troopers were searching for him, and the Defendant did not introduce any evidence questioning the accuracy of the breath-alcohol test.

The Defendant also asserts in his brief that the State "did not prove [the Defendant] had not drank or eaten or threw up after driving" requiring reversal under the rule in State v. Sensing, 843 S.W.2d 412, 415-16 (Tenn. 1992). However, the Defendant is mistaken in his belief that in order for the breath-alcohol test results to be admissible, the State must prove that the person taking the test did not belch or vomit, and did not eat, drink, or have anything in his mouth during the time between driving and taking the test. A reading of the cases cited by the Defendant makes it clear that the critical time period is 20 minutes immediately preceding the administering of the breath-alcohol test. See id. at 416; State v. Brooks, 277 S.W.3d 407, 412-14 (Tenn. Crim. App. 2008), perm. app. denied (Tenn. July 21, 2008); State v. McCaslin, 894 S.W.2d 310, 311-12 (Tenn. Crim. App. 1994). Trooper Pryor testified that he observed the Defendant for the required 20 minutes. During that time the Defendant did not eat, drink, or have anything in his mouth and did not belch or vomit,

satisfying the Sensing requirements. We conclude that the evidence at trial was sufficient to sustain the Defendant's conviction for DUI. Accordingly, we affirm the Defendant's conviction.

## 2. Sentencing

The Defendant contends that his sentences were excessive because his convictions arose from "a traffic infraction" and that the trial court failed to afford weight to the proposed mitigating factors. The Defendant also asserts that the sentences should not be consecutive because the convictions were all part of one continuing act. The State responds that the Defendant has failed to show how his sentence is improper because the trial court sentenced the Defendant after weighing the enhancement and mitigating factors and imposed consecutive sentences based upon the Defendant's extensive criminal history.

An appellate court's review of sentencing is de novo on the record with a presumption that the trial court's determinations are correct. Tenn. Code Ann. § 40-35-401(d). As the Sentencing Commission Comments to this section note, on appeal the burden is on the Defendant to show that the sentence is improper. This means that if the trial court followed the statutory sentencing procedure, made findings of fact that are adequately supported in the record, and gave due consideration to the factors and principles that are relevant to sentencing under the 1989 Sentencing Act, the court may not disturb the sentence even if a different result were preferred. State v. Fletcher, 805 S.W.2d 785, 789 (Tenn. Crim. App. 1991); see also State v. Carter, 254 S.W.3d 335 (Tenn. 2008).

However, "the presumption of correctness which accompanies the trial court's action is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). In this respect, for the purpose of meaningful appellate review,

> [T]he trial court must place on the record its reasons for arriving at the final sentencing decision, identify the mitigating and enhancement factors found, state the specific facts supporting each enhancement factor found, and articulate how the mitigating and enhancement factors have been evaluated and balanced in determining the sentence.

State v. Jones, 883 S.W.2d 597, 599 (Tenn. 1994) (citation omitted); see Tenn. Code Ann. § 40-35-210(e).

Tennessee's sentencing act provides:

(c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

> (1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

> (2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c)(1)-(2).

The weight to be afforded an enhancement or mitigating factor is left to the trial court's discretion so long as its use complies with the purposes and principles of the 1989 Sentencing Act and the court's findings are adequately supported by the record. Id. § (d)-(f); Carter, 254 S.W.3d at 342-43. Therefore, this court is "bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in . . . the Sentencing Act." Carter, 254 S.W.3d at 346. As explained by our supreme court in Carter, the 2005 amendments to the Sentencing Act now afford the trial court such greater discretion that:

> the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of the [Sentencing Act].'"

Carter, 254 S.W.3d at 343 (citing Tenn. Code Ann. § 40-35-210(d)). Accordingly, on appeal we may only review whether the enhancement and mitigating factors were supported by the record and whether their application was not otherwise barred by statute. See id.

In conducting its de novo review, the appellate court must consider (1) the evidence, if any, received at the trial and sentencing hearing, (2) the presentence report, (3) the principles of sentencing and arguments as to sentencing alternatives, (4) the nature and

characteristics of the criminal conduct, (5) any mitigating or statutory enhancement factors, (6) any statement that the defendant made on his own behalf, (7) the defendant's potential for rehabilitation or treatment, and (8) any statistical information provided by the Administrative Office of the Courts as to sentencing practices for similar offenses in Tennessee. Tenn. Code Ann. §§ 40-35-102, -103, -210; see also Ashby, 823 S.W.2d at 168; State v. Moss, 727 S.W.2d 229, 236-37 (Tenn. 1986).

We conclude that the record supports the trial court's sentence. The trial court considered the enhancement factors presented by the State and the mitigating factors presented by the Defendant. The trial court gave great weight to the Defendant's "substantial" history of criminal activity and convictions. The trial court stated that the Defendant's criminal history covered nine pages of the presentence report and included numerous convictions in addition to those necessary to establish the Defendant as a Range II offender. We note that the presentence report was not included in the record on appeal and, therefore, we presume the trial court's ruling was supported by sufficient evidence. See State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991), perm. app. denied (Tenn. 1991). Additionally, the trial court gave great weight to the fact that the Defendant had previously violated probation on several occasions. As previously explained, as long as the record reflects that the trial court considered the principles of sentencing and facts and circumstances of the offense in arriving at its determination, this court is bound by the weight afforded any sentencing factors applicable to the offense. The Defendant characterizes his convictions as arising from a mere "traffic infraction." However, the Defendant was convicted of three Class E felonies, including DUI, fourth offense and evading arrest. The mere fact that the Defendant's arrest was the ultimate result from his driving on the wrong side of the road does not lessen the seriousness of the offenses for which he was convicted. We further conclude that the effective sentence length of 12 years complies with the purposes and principles of the Sentencing Act. Accordingly, the sentence lengths are affirmed.

Relative to the trial court's imposition of consecutive sentences, the trial court made specific findings that the Defendant qualified as an offender with an extensive history of criminal activity. Tenn. Code Ann. § 40-35-115(b)(2). This court has consistently held that criminal history may serve as the basis for findings regarding the length and manner of service. State v. Meeks, 867 S.W.2d 361, 377 (Tenn. Crim. App. 1993). Accordingly, we affirm the trial court's imposition of consecutive sentences based upon the Defendant's extensive criminal history.

## CONCLUSION

Upon consideration of the foregoing and the record as a whole, the judgments of the trial court are affirmed.

_____
D. KELLY THOMAS, JR., JUDGE