IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
June 23, 2024 Session

## STATE OF TENNESSEE v. VIKASH PATEL

**Appeal from the Criminal Court for Greene County**
**No. CC21CR543     Alex E. Pearson, Judge**

_____

**No. E2023-00953-CCA-R3-CD**

_____

A Greene County jury found the Defendant, Mr. Vikash Patel, guilty of one count of driving under the influence of an intoxicant (DUI).  The trial court sentenced the Defendant to a term of eleven months and twenty-nine days, which was suspended after service of ten days in confinement.  In this appeal, the Defendant argues that the evidence is legally insufficient to sustain his conviction.  He also asserts that the State failed to establish a proper chain of custody for his blood sample and that, as such, the analysis of this sample should not have been admitted.  Upon our review, we respectfully affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right;**
**Judgment of the Criminal Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., J., joined.  JAMES CURWOOD WITT, JR., J., not participating.[1]

Cody T. Knight (on appeal), and Joseph Oren McAfee (on appeal and at trial); and C. Berkeley Bell (at trial), Greeneville, Tennessee, for the appellant, Vikash Patel.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Dan E. Armstrong, District Attorney General; and Cameron Buckner and James Bradley Mercer, Assistant District Attorneys General, for the appellee, the State of Tennessee.

---

[1]     The Honorable James Curwood Witt, Jr., passed away on August 17, 2024, and did not participate in this opinion.  We acknowledge his twenty-seven years of dedicated and faithful service to this court, both as a past presiding judge and its longest-serving member.

# OPINION

## FACTUAL BACKGROUND

On August 7, 2021, Officer Ethan Parton of the Greeneville Police Department responded to an accident scene around 3:30 a.m. He found a car that had veered off the road and into nearby vegetation. The Defendant, who had no visible injuries and was standing near the vehicle, explained that he had been trying to turn the car around when it inadvertently left the road. Soon after, Officer Jacob Sasscer arrived to assist. As he questioned the Defendant, he detected a strong smell of alcohol and noted the Defendant's slurred speech. For safety, Officer Sasscer moved the Defendant to a nearby driveway to administer field sobriety tests. The Defendant showed signs of intoxication during the tests, leading Officer Sasscer to arrest him for DUI.

Following the arrest, the Defendant consented to a blood test, and Officer Sasscer took him to Greeneville Community Hospital. There, Officer Sasscer identified the nurse who drew the Defendant's blood as "Nurse Watson" and stated that he watched her take a sample of the Defendant's blood. He also testified that Nurse Watson sealed the Defendant's blood sample in a kit along with a form requesting its analysis. Officer Sasscer testified that he did not witness any tampering or other abnormalities with the Defendant's blood sample. After he drove the Defendant to the Greene County Detention Center, Officer Sasscer "went immediately" to the Greeneville Police Department to lock the kit into the evidence locker. He described these lockers as secure and noted that only an evidence technician or evidence detective could open them.

On March 14, 2022, a Greene County grand jury charged the Defendant with one count of driving under the influence of an intoxicant "while the alcohol concentration of the person's blood was .114%, an amount of eight-hundredths of one percent or more (.08%) or more." During the trial in March 2023, Officer Sasscer testified about the events described above. Under cross-examination, he admitted that he had not personally seen the Defendant driving or exiting the vehicle. He also confirmed there was no damage to the car or the surrounding property and that the signs of intoxication only became apparent during the sobriety tests. However, on redirect, Officer Sasscer clarified that the Defendant had admitted to driving from a bar and trying to turn his vehicle around before it left the road.

Tennessee Bureau of Investigation ("TBI") Special Agent Melanie Carlisle, an expert in blood alcohol analysis, explained the procedures for handling and testing blood samples at the TBI. Agent Carlisle testified that the Defendant's blood sample was securely sealed and untampered with upon its arrival at the TBI. Her analysis showed that

2

when the Defendant's blood was drawn, his alcohol concentration was 0.114 grams percent ethyl alcohol. On cross-examination, she acknowledged that her analysis only reflected the blood alcohol level at the time of the draw and could not determine his blood alcohol level before or after that moment.

Following the trial, the jury found the Defendant guilty as charged, and the trial court sentenced the Defendant to a term of eleven months and twenty-nine days, which was suspended to probation after service of ten days in confinement. The Defendant filed a timely motion for a new trial, which the trial court denied on May 23, 2023. This appeal followed.

## ANALYSIS

On appeal, the Defendant raises two issues for our review. First, he argues that the evidence is legally insufficient to sustain his conviction. Second, he asserts that the trial court erred in admitting the analysis of his blood sample because the State failed to establish a sufficient chain of custody for the evidence. We will address each issue in turn.

### A. LEGAL SUFFICIENCY OF THE EVIDENCE

The Defendant contends that the evidence is legally insufficient to support his DUI conviction. He argues that because both the indictment and the jury instructions specified that his blood alcohol concentration was exactly 0.114 grams percent ethyl alcohol at the time of the offense, the State assumed a higher burden of proof than would otherwise be required by statute. Additionally, the Defendant notes that Agent Carlisle testified she could not definitively determine his blood alcohol concentration before 4:09 a.m. when his blood was drawn. Therefore, he claims that the evidence is insufficient to prove that his blood alcohol concentration was exactly 0.114 grams percent at the time of the offense. We respectfully disagree.

### 1. Standard of Appellate Review

"The standard for appellate review of a claim challenging the sufficiency of the State's evidence is 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *State v. Miller*, 638 S.W.3d 136, 157 (Tenn. 2021) (quoting *Jackson v. Virginia*, 443 U.S. 307 (1979)). This standard of review is "highly deferential" in favor of the jury's verdict. *See State v. Lyons*, 669 S.W.3d 775, 791 (Tenn. 2023). Indeed, this standard requires us to resolve all conflicts in favor of the State's theory and to view the credited testimony in a light most favorable to the State. *State v. McKinney*,

3

669 S.W.3d 753, 772 (Tenn. 2023). To that end, "[w]e do not reweigh the evidence, because questions regarding witness credibility, the weight to be given the evidence, and factual issues raised by the evidence are resolved by the jury, as the trier of fact." *State v. Shackleford*, 673 S.W.3d 243, 250 (Tenn. 2023) (citations omitted). "The standard of review is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (internal quotations and citations omitted).

### 2. Driving Under the Influence

As is relevant to this case, Tennessee Code Annotated section 55-10-401 provides as follows:

It is unlawful for any person to drive or to be in physical control of any automobile or other motor driven vehicle on any of the public roads and highways of the state, or on any streets or alleys, or while on the premises of any shopping center, trailer park, or apartment house complex, or any other premises that is generally frequented by the public at large, while:

1. Under the influence of any intoxicant, marijuana, controlled substance, controlled substance analogue, drug, substance affecting the central nervous system, or combination thereof that impairs the driver's ability to safely operate a motor vehicle by depriving the driver of the clearness of mind and control of oneself that the driver would otherwise possess; [or]

2. The alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more[.]

As can be seen in this statute, a defendant may be convicted of DUI under two separate theories: driving while under the influence of an intoxicant (DUI by intoxication), and DUI committed with a blood alcohol concentration of 0.08 percent or more (DUI per se). *State v. Singh*, 684 S.W.3d 774, 781 (Tenn. Crim. App. 2023). If a jury finds a defendant guilty under both theories, the trial court should merge the convictions into a single judgment. *See State v. Cooper*, 336 S.W.3d 522, 524 (Tenn. 2011).

In this case, the Defendant was charged and convicted solely of DUI per se. However, instead of simply alleging that the Defendant's blood alcohol concentration was "0.08% or more" as required by statute, the Greene County grand jury instead alleged a

specific concentration. It charged that the Defendant operated a motor vehicle on a public road with a blood alcohol concentration of ".114%, an amount of eight-hundredths of one percent or more (.08%) or more." Consistent with this allegation, the trial court instructed the jury that the State had to prove beyond a reasonable doubt that the Defendant's blood alcohol concentration was ".114 percent, an amount of eight[] hundredths of [one] percent or more."

The Defendant argues that the grand jury's specific allegation of 0.114% raised the State's burden of proof. He contends that because the grand jury alleged a precise alcohol concentration, and the trial court echoed this in its instructions, the State was required to prove that his blood alcohol concentration was exactly 0.114% at the time of driving for a conviction. We respectfully disagree.

At one time, Tennessee common law held that "if a person or thing necessary to be mentioned in an indictment is described with greater particularity than is requisite, such person or thing must be proved exactly as described in the indictment." *Bolton v. State*, 617 S.W.2d 909, 910 (Tenn. Crim. App. 1981) (cited in *State v. March*, 293 S.W.3d 576, 588 (Tenn. Crim. App. 2008)). However, some forty years ago, the supreme court recognized that this common law rule "has been relaxed in modern times so that substance rather than form is now determinative of such questions." *State v. Moss*, 662 S.W.2d 590, 592 (Tenn. 1984). This approach "is consistent with the test of an indictment's sufficiency[,] which is the adequacy of the notice to the defendant conveyed by its terms." *State v. Mayes*, 854 S.W.2d 638, 640 (Tenn. 1993) (citation and internal quotation marks omitted).

Since then, Tennessee law has been clear that the essential elements of a crime that must be alleged and proven are those set forth in a statute. *See March*, 293 S.W.3d at 589. Thus, where a grand jury alleges facts in addition to the essential statutory elements, the additional facts may be disregarded as "surplusage" when two conditions are satisfied: "(1) the indictment otherwise sufficiently informs the defendant of the charge against him such that he will not be misled and can adequately plan a defense[;] and (2) the variance is such that the defendant cannot be prosecuted again for the same offense due to double jeopardy principles." *Mayes*, 854 S.W.2d at 641; *State v. Culp*, 891 S.W.2d 232, 236 (Tenn. Crim. App. 1994) ("If an indictment's surplusage is with respect to a matter legally essential to the charge, then it must be proven to the degree of detail alleged. If it is not essential, then it need not be proven at all.").

Where these two concerns are not at issue, surplus terms "cannot enlarge the essential elements of the offense," and they may be "disregarded in analyzing the sufficiency of the convicting evidence." *March*, 293 S.W.3d at 589 (citing *Church v. State*, 206 Tenn. 336, 333 S.W.2d 799, 809 (1960)). Similarly, where a jury instruction adds an element to the charged crime, our review of the sufficiency of the convicting evidence is

5

assessed against the elements of the charged crime rather than the instruction's heightened command. *Musacchio v. United States*, 577 U.S. 237, 243 (2016) (also stating that "[a] reviewing court's limited determination on sufficiency review thus does not rest on how the jury was instructed. When a jury finds guilt after being instructed on all elements of the charged crime plus one more element, the jury has made all the findings that due process requires.").

In this case, the law prohibits driving on a public road when "[t]he alcohol concentration in the person's blood or breath is eight-hundredths of one percent (0.08%) or more[.]" Tenn. Code Ann. § 55-10-401(2). Both the grand jury's indictment and the trial court's instructions alleged a more specific blood alcohol concentration than was required by statute. But, each also identified that this specific concentration was "an amount of eight[] hundredths of [one] percent or more," which is the essential element required to be proven by section 55-10-401(2). Under these circumstances, the identification of a specific blood alcohol concentration was not a matter legally essential to the charge. *See Culp*, 891 S.W.2d at 236. It "merely serve[d] to describe the offense charged and form[ed] no part of its substance." *Mayes*, 854 S.W.2d at 640 (citations omitted).

Importantly, this is not a case in which the Defendant was misled about whether he was being called upon to defend against a charge of DUI per se in violation of section 55-10-401. After all, the indictment and the jury instructions sufficiently identified the Defendant, the statute alleged to have been violated, and the essential statutory elements of the crime. The indictment's allegations also protected him from further prosecution related to this conviction. As such, we conclude that the allegation as to a specific blood alcohol concentration was surplusage and that the State was only required to prove the essential elements of DUI per se as established by statute. Therefore, our review of the legal sufficiency of the convicting evidence must be measured against those essential statutory elements.

Viewing the evidence in a light most favorable to the State, a rational juror could have found the essential elements of DUI per se beyond a reasonable doubt. The officers at the scene saw the Defendant standing outside his vehicle, which had been driven off the road and into the nearby "vegetation" or "bank," and noticed the Defendant's speech was slurred. The Defendant smelled strongly of alcohol and acknowledged that he had been returning from a bar when he drove his vehicle off the road. The Defendant then performed poorly on a series of sobriety tests.

We have recognized that a blood alcohol test that is "administered at a 'reasonable time' after the defendant was driving" and that reflects a blood alcohol concentration greater than the statutory minimum, "constitutes circumstantial evidence upon which the

6

trier of fact may, but is not required to, convict the defendant of DUI." *State v. Greenwood*, 115 S.W.3d 527, 532-33 (Tenn. Crim. App. 2003). In this case, the Defendant's blood was drawn thirty-nine minutes after officers first encountered him at the accident scene. His blood alcohol concentration at the time of the draw was .114%, well above the legal limit of .08%, and no evidence in the record suggests that the Defendant had any alcohol during the time between his crash and the arrival of Officer Parton. *See State v. Ralph*, 347 S.W.3d 710, 717 (Tenn. Crim. App. 2010). Because the blood draw was conducted within a reasonable time after the defendant had been driving, the jury could consider this fact as circumstantial evidence that his blood alcohol level was 0.08% or more at the time he was driving. *Greenwood*, 115 S.W.3d at 532-33 (affirming conviction when the blood withdrawal was conducted fifty-five minutes after the stop and had a blood alcohol content of .12%). As such, we conclude that a rational juror could have found the essential elements of DUI per se beyond a reasonable doubt.

### B.     CHAIN OF CUSTODY

The Defendant next challenges the trial court's conclusion that the State established a sufficient chain of custody for his blood sample, arguing that the State did not authenticate it through an unbroken chain of custody. The Defendant asserts that the State failed to present evidence as to what became of his blood sample after Officer Sasscer placed it into the evidence locker at the Greeneville Police Department and before Agent Carlisle received it for her analysis. The State responds that Officer Sasscer and Agent Carlisle's testimonies sufficiently established the identity and integrity of the evidence. We agree with the State.

It is "well-established that as a condition precedent to the introduction of tangible evidence, a witness must be able to identify the evidence or establish an unbroken chain of custody." *State v. Scott*, 33 S.W.3d 746, 760 (Tenn. 2000) (citation and internal quotation marks omitted). The purpose of the rule is "to insure 'that there has been no tampering, loss, substitution, or mistake with respect to the evidence.'" *State v. Daniels*, 656 S.W.3d 378, 389-90 (Tenn. Crim. App. 2022) (quoting *Scott*, 33 S.W.3d at 760). As to the State's burden to prove a chain of custody, our supreme court has said:

> Even though each link in the chain of custody should be sufficiently established, this rule does not require that the identity of tangible evidence be proven beyond all possibility of doubt; nor should the State be required to establish facts which exclude every possibility of tampering. An item is not necessarily precluded from admission as evidence if the State fails to call all of the witnesses who handled the item. Accordingly, when the facts and circumstances that surround tangible evidence reasonably establish the

7

identity and integrity of the evidence, the trial court should admit the item into evidence.

*State v. Cannon*, 254 S.W.3d 287, 296 (Tenn. 2008) (citations omitted). Of course, "[e]vidence should not be admitted if its identity and integrity cannot be demonstrated by chain of custody or other appropriate means." *State v. Johnson*, No. W2019-01133-CCA-R3-CD, 2022 WL 1134776, at *10 (Tenn. Crim. App. Apr. 18, 2022) (citing *Scott*, S.W.3d at 760), *perm. app. denied* (Tenn. Aug. 4, 2022). We review a trial court's finding that a party has established a sufficient chain of custody for tangible evidence for an abuse of discretion. *State v. Watkins*, 648 S.W.3d 235, 271 (Tenn. Crim. App. 2021).

In the context of blood samples taken for TBI forensic analysis in DUI cases, the State is not required to present every witness handling the blood sample to establish a proper chain of custody. *Singh*, 684 S.W.3d at 784. Instead, the State sufficiently establishes the chain of custody for a blood sample used in forensic testing when

- the investigating officer testifies that he or she watched the blood draw and received the sample from a nurse or phlebotomist;

- the investigating officer testifies that he or she then placed the sealed blood sample in a labeled, protective box and placed the box in an evidence locker for later delivery to the TBI;

- a TBI witness describes the procedures for the TBI's receipt and handling of the sample, including any notation of tampering or irregularities with the blood sample; and

- the TBI forensic scientist testifies that the sample showed no irregularity, tampering, or degrading during testing.

*Id*. (citations omitted).

With these principles in mind, we now turn to the Defendant's case. Officer Sasscer testified that he drove the Defendant to Greeneville Community Hospital, where he watched Nurse Watson take a sample of the Defendant's blood. Nurse Watson then placed the Defendant's blood sample into a kit along with a request form, sealed and signed the kit, and gave it to Officer Sasscer. Officer Sasscer then took this kit to the Greeneville Police Department and placed the kit in the evidence locker. Officer Sasscer further testified that the evidence locker was secure and could not be accessed by anyone other than an evidence technician or evidence detective. In her testimony, Agent Carlisle described the standard procedure by which the TBI receives blood samples for

examination, noting that any abnormalities would be documented and that the absence of any documentation indicated that no abnormalities existed. Agent Carlisle further testified that the Defendant's blood sample was securely sealed and untampered with upon its arrival at the TBI and that no abnormalities were documented.

In our view, this evidence sufficiently established the chain of custody for the Defendant's blood sample. Indeed, this case is practically indistinguishable from our decision in *Singh*. Accordingly, we conclude that the trial court acted within its discretion in finding that a proper chain of custody had been established with respect to the Defendant's blood sample and in admitting Agent Carlisle's report of her analysis of that sample. The Defendant is not entitled to relief on this ground.

## CONCLUSION

In summary, we hold that the evidence is legally sufficient to support the Defendant's conviction for driving under the influence of an intoxicant. We also hold that the trial court acted within its discretion in finding that the State sufficiently established the chain of custody for the Defendant's blood sample. Accordingly, we respectfully affirm the judgment of the trial court.

_____
TOM GREENHOLTZ, JUDGE